**REVISED**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-31167
_____


DOBIE GILLIS WILLIAMS,

Petitioner - Appellee-Cross-Appellant,

versus

BURL CAIN, Acting Warden,
Louisiana State Penitentiary,
Angola, Louisiana,

Respondent - Appellant-Cross-Appellee.

_____

Appeals from the United States District Court for the
Western District of Louisiana
_____

October 3, 1997

Before JOLLY, BENAVIDES, and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Dobie Gillis Williams has been sentenced to death by the state
of Louisiana.  In this federal petition for a writ of habeas corpus
he challenges both his conviction and death sentence on multiple
grounds.  The district court granted the petition on the ground
that Williams had received ineffective assistance of counsel, but
only at his sentencing hearing, and thus set aside the death
sentence unless Louisiana conducted a new sentencing hearing.  The
district court rejected Williams's other claims.  Louisiana appeals
the grant of habeas relief on the ineffective assistance of counsel

claim, and Williams cross-appeals the denial of two of his other claims. We conclude that the district court erred in finding that Williams's counsel provided ineffective assistance during the sentencing hearing. We also reject Williams's claim concerning discrimination in the selection of the grand jury foreman as procedurally barred, and conclude that the jury's consideration of an invalid aggravating factor at sentencing does not require that Williams's death sentence be vacated. In short, we reinstate the death sentence.

I

On the evening of July 6, 1984, Mrs. Sonja Knippers fell asleep on her living room sofa while watching television. She awoke just past midnight and stopped in the bathroom before going to bed. When she closed the bathroom door, she discovered Williams hiding behind it, pantless and brandishing a knife. Mrs. Knippers began to scream. Williams locked the bathroom door and stabbed Mrs. Knippers repeatedly with the knife before fleeing out the bathroom window. Although fatally injured, Mrs. Knippers was able to unlock the bathroom door after Williams fled. Her husband carried her to the living room, where she bled to death in his arms.

Mr. Knippers informed police that his wife had screamed that a black man was trying to kill her. At the time, Williams, who is black, was staying at the home of his grandfather on a five-day furlough while serving a prison sentence for a prior burglary

conviction. Police suspected Williams because his grandfather's home was nearby. Williams was taken in for questioning, and ultimately confessed to the crime after investigators observed fresh scratches and other abrasions on his arms and legs. Williams's statement led the investigators to the murder weapon, found in the grass outside the Knipperses' home, and to the shirt that he was wearing at the time of the crime, which he had hidden underneath the porch at his grandfather's house.

## II

Williams was indicted for first degree murder by a grand jury in Sabine Parish, Louisiana. Because of extensive pretrial publicity, the trial was moved to Grant Parish, where Williams was convicted by a jury after a five-day trial. During the guilt phase of the trial, Williams's attorney, Mr. Michael Bonnette, attempted to prevent a capital conviction by challenging the existence of the aggravating factors that the jury must find to convict for first degree murder rather than second-degree murder. Bonnette's efforts were unsuccessful, and Williams was convicted of first degree murder.

During the sentencing hearing that followed the guilt phase of the trial, Bonnette made statements referring to mitigating evidence, but did not call any witnesses. Bonnette did cross-examine one of the state's witnesses. The jury recommended that Williams be sentenced to death, finding two statutory aggravating factors: (1) that Williams was engaged in the

perpetration of an aggravated burglary or an attempted aggravated rape, and (2) that the offense was committed in an especially heinous, atrocious, or cruel manner.

Williams's conviction and sentence were affirmed by the Louisiana Supreme Court. State v. Williams, 490 So.2d 255 (La. 1986). His petition for a writ of certiorari was denied by the Supreme Court, and his conviction became final on June 26, 1987. Williams v. Louisiana, 483 U.S. 1033 (1987).

Williams thereafter filed several state court petitions for post-conviction relief. Judge Hiram Wright of the Thirty-Fifth Judicial District Court of Louisiana, Grant Parish, held evidentiary hearings in 1988 to address Williams's claims concerning ineffective assistance of counsel during the penalty phase and the admissibility of his confession, ultimately rejecting both claims. Numerous additional claims were considered and rejected by Judge Wright in 1992. The Louisiana Supreme Court denied supervisory writs with respect to these claims. In 1993, the Louisiana Supreme Court granted a supervisory writ with respect to Williams's claim concerning discrimination in the selection of the grand jury foreman. Judge Wright subsequently held an evidentiary hearing on that claim, and rejected the claim. The Louisiana Supreme Court later denied Williams's further request for a supervisory writ, ending the state post-conviction proceedings.

Williams filed a petition for a writ of habeas corpus in federal district court on April 25, 1996, raising some twenty

-4-

grounds of relief. The district court found that Bonnette, Williams's counsel, failed to adequately investigate Williams's background and to present available mitigating evidence during the penalty phase of the trial. The district court found that Bonnette's failure to prepare for the penalty phase of the trial was unreasonable, such that Williams was effectively "without counsel during the penalty phase of his trial." The court found that "[t]he absence created a constitutionally impermissible condition," and ruled that Williams's death sentence therefore violated the Eighth and Fourteenth Amendments of the federal Constitution. The court rejected Williams's nineteen other claims, including the claims concerning discrimination in the selection of the grand jury foreman and constitutional defects in the jury instructions during the penalty phase.

The state timely appealed the district court's judgment granting a writ of habeas corpus on the grounds of ineffective assistance of counsel during the sentencing phase of the trial. Williams cross-appealed, and filed a request for a certificate of appealability in accordance with the new requirements imposed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (1996). We granted Williams a certificate of appealability limited to two of his claims: (1) whether racial discrimination in the selection of the grand jury foreman requires that his indictment be set aside and his conviction and sentence be vacated, and (2) whether

constitutional defects in the jury instructions during the penalty phase of his trial require that his sentence be vacated.

## III

## A

We must first consider the applicability of the AEDPA to Williams's appeal. At the time that Williams requested a certificate of appealability, the Fifth Circuit had held that the deferential standard for federal habeas review of state court decisions imposed by 28 U.S.C. § 2254(d), as amended by the AEDPA, applied to cases pending at the time of the AEDPA's enactment. Drinkard v. Johnson, 97 F.3d 751, 766 (5th Cir. 1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1114 (1997). However, the Supreme Court's recent decision in Lindh v. Murphy, ___ U.S. ___, 117 S.Ct. 2059 (1997), overrules Drinkard's conclusion that the amended § 2254 may be applied retroactively. We must therefore determine whether, for AEDPA purposes, Williams's petition was already pending on April 24, 1996, the effective date of the AEDPA.

Williams argues that his case was "pending" as of the effective date of the AEDPA because he had filed motions for a stay of execution, to proceed in forma pauperis and for appointment of counsel on April 23, 1996, one day before the AEDPA became effective. In support of his position, Williams cites the Supreme Court's decision in McFarland v. Scott, 512 U.S. 849, 114 S.Ct. 2568 (1994). In that case, the Court held that the filing of a motion for a stay of execution and for appointment of counsel

-6-

establishes a "post-conviction proceeding" within the meaning of 21 U.S.C. 848(q)(4)(B), which establishes a right to appointed counsel for indigent habeas applicants, such that a federal court had jurisdiction to appoint counsel even without the filing of a valid habeas corpus petition. Id. at 855-58, 114 S.Ct. at 2572-73. The court further observed that the appointment of counsel would be "meaningless" in McFarland's case unless the court also enjoyed the authority to stay McFarland's execution so that counsel could have time to prepare a habeas petition. The Court therefore held that where a motion for stay has been filed, "a district court has jurisdiction to enter a stay of execution where necessary to give effect" to the right to appointed counsel. Id. at 859, 114 S.Ct. at 2574.

The Court in McFarland did not decide whether the filing of a motion to stay and to appoint counsel "initiated a habeas corpus proceeding."[1] Instead, the court found that the relevant statutes used the terms "post-conviction proceeding" and "habeas corpus proceeding" interchangeably, and that entering a stay of execution even without a formal habeas petition would, in some cases, be necessary to effectuate the statutory rights. Id. at 857-59, 114 S.Ct. at 2573-74.

_____

[1]28 U.S.C. § 2251 grants a federal court "before whom a habeas corpus proceeding is pending" the power to stay state court action related to the subject of the habeas corpus proceeding.

McFarland does not answer the question of what date a habeas petition becomes "pending" for determining the applicability of substantive statutes. The obvious approach, of course, is that a habeas petition is "pending" only after a petition for a writ of habeas corpus itself is filed. Although McFarland might be argued to raise a question in this regard, we believe that McFarland was intended to resolve practical procedural problems in such a way that unrepresented, indigent defendants could effectively enjoy the right to counsel established by 21 U.S.C. § 848(q). As such, McFarland does not resolve the question before us, and we conclude that the relevant date for determining the applicability of the AEDPA to habeas corpus petitions is the date that the actual habeas corpus petition is filed. We therefore hold that the AEDPA amendments to chapter 153 of Title 28 apply to cases where a petition for habeas corpus is filed on or after April 24, 1996. Because Williams's actual petition was filed on April 25, 1996, the AEDPA's revised standard of review applies to his petition.

B

We turn now to the question of whether alleged racial discrimination in the selection of the foreman of the grand jury that indicted Williams requires that his indictment, conviction and sentence be vacated. Williams cites the fact that no black foremen had been selected in Sabine Parish in the fifteen years prior to his indictment, combined with evidence concerning the percentage of blacks who were registered to vote and evidence concerning the

selection of foremen by individual state court judges.  The state
responds first that Williams's claim on this issue is procedurally
barred because he failed to file a pretrial motion to quash his
indictment.  The state also argues that even if the claim is not
procedurally barred, Williams's statistical evidence is inadequate
to meet his burden of proof.  We agree with the state that the
claim is procedurally barred, and therefore do not reach the merits
of the underlying claim.

It is undisputable that under Louisiana law, a challenge to
the legality of the grand jury venire must be made by a pretrial
motion to quash.[2]  The Louisiana Code of Criminal Procedure also

---

[2]The following articles of the Louisiana Code of Criminal
Procedure indicate that a motion challenging the composition of the
grand jury must be made by a pretrial motion to quash.

La. Code Crim. Proc. art. 533 (in relevant part):

> A motion to quash an indictment by a grand jury may also
> be based on one or more of the following grounds: (1) The
> manner of selection of the general venire, the grand jury
> venire, or the grand jury was illegal.

La. Code Crim. Proc. art. 521 (in relevant part):

> Pretrial motions shall be made or filed within fifteen
> days after arraignment [unless other provisions of law or
> the court allows otherwise for good cause].

La. Code Crim. Proc. art. 535 (in relevant part):

> C. A motion to quash on grounds other than those
> stated in Paragraphs A and B of this Article [which do
> not include challenges to the grand jury] shall be filed
> in accordance with Article 521.
> D. The grounds for a motion to quash under
> Paragraphs B and C are waived unless a motion to quash is
> filed in conformity with those provisions.

specifically states that "[t]he grounds for a motion to quash []
*are waived* unless a motion to quash is filed . . ." La. Code Crim.
Proc. art. 535(D)(emphasis added).  It is undisputed that Williams
never filed a pretrial motion to quash, let alone a timely motion.
Williams raised his claim based on the selection of the grand jury
foreman for the first time during his state post-conviction
proceedings.    Therefore, under Louisiana law his claim is
procedurally barred.  Deloch v. Whitley, 684 So.2d 349, 350 (La.
1996) (holding equal protection claim based upon discriminatory
selection of grand jury foreman procedurally barred by defendant's
failure to file a pretrial motion to quash).

Williams argues, however, that this court must reject the
state's argument that the claim is procedurally barred because the
Louisiana Supreme Court implicitly overruled the procedural
objection by issuing a supervisory writ that directed the state
trial court to hold an evidentiary hearing concerning the grand
jury foreman selection process.  State ex rel Williams v. Whitley,
No. 93-KD-2709 (La. Nov. 2, 1993) (unpublished).

In particular, Williams argues that the Supreme Court's
decision to order an evidentiary hearing is a reflection of
Louisiana's "death case exception."  Williams cites a variety of
Louisiana death penalty cases in which reviewing courts considered
errors that were not objected to at trial, on the ground that a
special exception applied to death penalty cases.  The majority of
these cases concern alleged errors during the sentencing phase of

the trial.  Although Williams does cite cases applying the "death case exception" to guilt-phase errors, this practice was unambiguously rejected by the Louisiana Supreme Court in State v. Taylor, 669 So.2d 364, 369 (La.), cert. denied, ___ U.S. ___, 117 S.Ct. 162 (1996):

> . . . we abandon the expanded scope of review in capital cases established in Smith and its progeny, overrule them and return to previously existing law.  This Court's scope of review in capital cases will be limited to alleged errors occurring during the guilt phase that are contemporaneously objected to, and alleged errors occurring during the sentencing phase, whether objected to or not.

Although Williams attempts to escape Taylor by arguing that Taylor only altered the death case exception by eliminating it for the guilt phase of capital trials, we find Taylor quite clear: Louisiana's "death case exception" only permits review of unobjected-to errors that occur during the sentencing phase of capital trials.  There is simply no support for Williams's position that the "death case exception" somehow extends to a failure to file a pretrial motion to quash an indictment.

A federal court reviewing a state prisoner's habeas claim must respect a state court's determination that the claim is procedurally barred under state law.  Wainwright v. Sykes, 433 U.S. 72, 90-91, 97 S.Ct. 2497, 2508-09 (1977).  The rule is quite simple:  "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly

-11-

states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043 (1989) (internal quotation marks and citation omitted).[3]

In the case before us, the Louisiana Supreme Court's order granting the supervisory writ cannot be considered a decision on the merits.[4]  Additionally, it was not the last court to address the state's procedural objection.  The last state court to reach the merits of Williams's claim was the district court that held the evidentiary hearing concerning the grand jury selection process. That court was quite clear in its decision that it reviewed Williams's evidence on the underlying claim only because the writ had been granted:

> The State contends that the defendant is banned from proceeding further by the provisions of C.Cr.P. Articles 521, 522 and 525 because defendant failed to file a motion to quash prior to trial.  According to the articles cited and the case law, the State appears to be correct.  However, this Court was expressly ordered to consider the issue of selection of the grand jury and that is what this Court will do.

Williams v. Whitley, No. 33,481 (La. Dist. Ct., Grant Parish, May 25, 1995) (unpublished).  The court proceeded to consider the

---

[3]In Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 2559 (1991), the Court explained that the "clear and express" statement requirement applies to cases where the state court's judgment fairly appears to rest primarily upon federal law, or to be interwoven with federal law, and not to cases where there is no reason to question whether the decision was based upon independent and adequate state law grounds.

[4]The state, in fact, asserts that the supreme court's order granting the writ was issued before the court even received the state's response raising the procedural bar.

question whether there was unconstitutional discrimination in the selection of the grand jury foreman, and specifically found that there was not. However, the court then noted that the matter was heard "subject to the district attorney's procedural objections," and then *specifically ruled* that because Williams had failed to file a pretrial motion to quash, "defendant has waived all rights to file this motion." Id. The Louisiana Supreme Court thereafter denied Williams's subsequent application for a supervisory writ without comment. Williams v. Whitley, No. 95-KD-2401 (La. Dec. 8, 1995) (unpublished).

Our obligation under Harris v. Reed and subsequent cases is clear. Because Williams failed to file a pretrial motion to quash his indictment, his claim of discrimination in the selection of the grand jury foreman is procedurally barred under Louisiana law. This procedural bar therefore provides an "adequate and independent" state law ground upon which the claim was rejected, and federal review of Williams's claim is barred unless Williams demonstrates both cause for the procedural default and actual prejudice resulting from the violation of federal law. Coleman, 504 U.S. at 750, 111 S.Ct. at 2565. Williams has not, and indeed cannot, demonstrate cause and prejudice, and we therefore have no warrant to reach the merits.

C

Williams also claims that his death sentence must be vacated and his case remanded for resentencing because he received

-13-

ineffective assistance of counsel during the sentencing phase of his trial. The district court granted Williams's petition for habeas relief on this claim, finding that Bonnette's performance at the sentencing phase of Williams's trial was so inadequate as to leave Williams effectively unrepresented at this phase.

To show that he received constitutionally ineffective assistance of counsel during the penalty phase, Williams must show both that Bonnette's performance was deficient and that his deficient performance prejudiced Williams's defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir.), cert. denied, ___ U.S. ____, 117 S.Ct. 487 (1996). Our examination of Bonnette's performance must be "highly deferential," and must consider the facts and resources available to Bonnette *at the time of trial*. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir.), cert. denied, 513 U.S. 960, 115 S.Ct. 418 (1994). Williams must also overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

Furthermore, the AEDPA's deferential standard of review applies to this case. Under the AEDPA, a federal court may not grant a writ of habeas corpus with respect to any claim that was rejected on the merits by a state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, *or involved an unreasonable application of*, clearly

-14-

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (as amended) (emphasis added). Furthermore, state court factual determinations shall be presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1) (as amended). In Drinkard, 97 F.3d at 769, we concluded that the second clause of the amended § 2254(d)(1), italicized above, applied to challenged applications of law to fact. For such claims, we found, the amended provision permits federal court relief "only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect." See also Carter v. Johnson, 110 F.3d 1098, 1108 (5th Cir. 1997) ("If reasonable jurists could disagree, the state court decision on a mixed question of law and fact is not 'an unreasonable application of federal law,' and thus the decision is immune from federal habeas attack.")

Williams's ineffective assistance of counsel claim was rejected on the merits by the Thirty-Fifth Judicial District Court, Grant Parish, after an evidentiary hearing was held to permit Williams to present evidence concerning his claim. Williams v. Butler, Warden, No. _____, (La. Dist. Ct., Sept. 7, 1988) (unpublished). That court found that Bonnette's failure to present evidence concerning Williams's alleged borderline retardation was

-15-

not deficient because Bonnette was aware that the state could produce evidence from three experts to rebut any such testimony. The court further concluded that testimony concerning Williams's "chaotic, violence-filled childhood" from family, friends or other lay witnesses "would not have changed the outcome of the sentencing phase," especially considering the state's detailed evidence concerning the brutal way in which Mrs. Knippers had been murdered.

Bearing in mind the deferential standard of review required by the amended § 2254(d), we turn now to the merits of Williams's claim. Williams argues that he received ineffective assistance of counsel because Bonnette failed to adequately investigate his background. Had Bonnette thoroughly investigated, Williams argues, he would have been able to introduce evidence that Williams was verbally or physically abused by his parents and other relatives with whom he lived during his childhood, that Williams was shuffled between his mother, father, and other relatives, and that despite this abuse Williams was "well-behaved in school" and took care of his younger siblings. Williams also argues that Bonnette provided constitutionally deficient assistance because he failed to present evidence that Williams had a "long history" of mental problems and that he was "borderline" retarded.

It is well established that "[t]he failure to present a case in mitigation during the sentencing phase of a capital trial is not, *per se*, ineffective assistance of counsel." Stringer v. Jackson, 862 F.2d 1108, 1116 (5th Cir. 1988), vacated and remanded

on other grounds, 503 U.S. 222, 112 S.Ct. 1130 (1992); West v. Johnson, 92 F.3d 1385, 1408 (5th Cir. 1996), cert. denied, __ U.S. ___, 117 S.Ct. 1847 (1997) (citing cases). Counsel does, however, have a duty to make "reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.

The parties dispute the extent of Bonnette's efforts to interview Williams's family members, an issue that cannot readily be resolved as Bonnette did not testify at the evidentiary hearing; Williams submitted only a brief affidavit from Bonnette. It is clear, however, that Bonnette did obtain information concerning Williams's mental status and family history. In preparation for the trial, Bonnette arranged for Williams to be evaluated by Dr. Strother Dixon, a clinical psychiatrist. Dr. Dixon's report chronologues much of Williams's difficult family history. The report also notes that Williams was "most cooperative" in answering questions, and was "alert" and "thoughtful in deliberation." Dr. Dixon concluded that:

> Although Mr. Williams has a positive family history for schizophrenia, he shows no indication of that thought disorder; nor does he have indications of Major Affective Disorder. He denies that he has trouble with his temper and this does not get him into trouble as far as he is concerned. Patient does appear to have difficulty with authority figures. He does not have a very good relationship with his biological father and feels abandoned by him. There has not been a lasting relationship with a male role model in his developmental years. He relates strongly to his mother and depends upon her seemingly for his primary emotional support. I would judge his intelligence as low-average. He is vague

> regarding his educational accomplishments. He probably had academic problems during his matriculation. His history depicts one who is impulsive and has a tendency to blame others for his situation.

Dr. Dixon's report also details the family, educational, and employment difficulties that Williams related to him.

Considering Dr. Dixon's report, we find Williams's arguments concerning his mental problems and alleged "borderline" retardation to be entirely unavailing. We have previously observed that counsel is not ineffective for failing to introduce evidence of a defendant's low intelligence. Andrews v. Collins, 21 F.3d 612, 624-25 (5th Cir. 1994), cert. denied, 513 U.S. 114, 115 S.Ct. 908 (1995). Bonnette's own expert concluded that Williams's intelligence fell within the "normal" range, and concluded that Williams had no significant psychiatric disorders. The state's experts who had examined Williams also found no indication of mental illness, and did not indicate that Williams was mentally retarded. Although Williams produced experts at his post-conviction evidentiary hearing who testified to his "borderline" retardation, *at the time of trial* Bonnette had no such information. Bonnette's assistance was not deficient for failing to locate an expert who would conclude that Williams was retarded or suffered from mental illness--especially in view of Bonnette's knowledge of the state's ability to rebut any such evidence with its own experts.

Williams offers a stronger argument that Bonnette provided constitutionally ineffective assistance for failing to present mitigating lay testimony from family or friends.  It is true, as Williams's expert testified at the state court evidentiary hearing, that such testimony is typically offered at the sentencing phase in order to "humanize" the defendant.  Still, evidence of a defendant's abuse-filled, violent upbringing and abuse of drugs and alcohol frequently can be "double-edged."  Contrary to the conclusion of the district court, it is apparent, as the state court found, that Bonnette was aware of the facts concerning Williams's difficult childhood.

The failure to present this evidence would not constitute "deficient" performance within the meaning of Strickland if Bonnette could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.  In Williams v. Collins, 16 F.3d 626, 632 (5th Cir.), cert. denied, 512 U.S. 1289, 115 S.Ct. 42 (1994), we rejected an ineffective assistance of counsel claim, concluding that the defendant's trial attorneys were "legitimately concerned that any mitigating testimony would have been presented by witnesses whose knowledge would have opened the door to more damaging evidence under cross-examination."

Considering the general circumstances of the penalty phase hearing, Bonnette's decision not to present evidence of Williams's troubled upbringing appears well considered.  Although Williams complains at length that Bonnette's presentation "consisted of only

questions asked during cross-examination of a prosecution witness," we note that the evidentiary presentation at the sentencing hearing was not nearly so lopsided as Williams suggests.

The state presented only two witnesses at the sentencing hearing. The first witness, a Many, Louisiana police officer, was called for the sole purpose of identifying Williams and introducing, through public documents, the fact of Williams's prior conviction for attempted "simple burglary." The second witness was the warden of the facility where Williams was incarcerated on the burglary charge. The state's questioning did no more than to establish that Williams had been released on a five-day furlough at the time of the murder, and to suggest, during redirect examination, that the Legislature *could* change the law to permit individuals serving life sentences to be released on furloughs.

There would have been little or no point to cross-examining the first witness. Bonnette did cross-examine Warden Gene, establishing that no more than a quarter of the prison's inmate population would ever receive a furlough, and that furloughs were granted only to the "least violent and the best behaved" prisoners. Bonnette also established that under current law, prisoners serving sentences of life without parole--the alternate sentence to death in Williams's case--were not eligible for furloughs.

Bonnette next requested and received a brief recess to confer with Dr. Dixon, his psychiatric expert. After the recess, Bonnette indicated that the defense would present no additional evidence,

stating that "[a]ll the evidence has been presented at trial." Bonnette's decision not to offer testimony concerning Williams's troubled upbringing and problems with drugs and alcohol, while noteworthy in the abstract, appears less troubling in the context of such a brief sentencing hearing, which did not at all delve into issues of Williams's character.

Bonnette's decision not to put on any witnesses prevented the state from offering any rebuttal evidence. This decision was quite arguably a wise choice. The record shows that, at the beginning of the sentencing hearing, Bonnette successfully prevented the state from introducing the testimony of the victim of Williams's prior "simple burglary," who was expected to testify that Williams "continued to try to get in her house, and break in on her and her children while she knew he was there *and he knew that she was aware he was trying to get in*" (emphasis added). Under the circumstances, it is quite likely that Bonnette consciously chose to take his chances with a jury that had been told nothing of Williams's character beyond the fact that he had previously been regarded as a model prisoner who had been convicted of an innocuous-sounding "simple burglary."

We need not determine, however, whether the district court erred in rejecting the state's argument that Bonnette's actions represented a tactical choice--an issue that the state court did not address--because we find that under the AEDPA's deferential standard of review, we must sustain the state court's conclusion

-21-

that the failure to present mitigating evidence concerning Williams's difficult childhood did not prejudice his defense within the meaning of Strickland. "If we can 'dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 697, 104 S.Ct. at 2069).

To establish prejudice, Williams must show that it is "reasonably likely that the jury would have reached a different decision absent counsel's unprofessional errors." Faulder, 81 F.3d at 519 (citing Strickland, 466 U.S. at 696, 104 S.Ct. at 2069). A "reasonable probability" need not be proof by a preponderance that the result would have been different, but it must be a showing "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

Bonnette could have presented evidence concerning Williams's troubled family history and the fact that he was verbally and physically abused as a child. These efforts, however, would have "opened the door" for cross-examination concerning Williams's use of drugs and alcohol, his purported expulsion from school for "causing trouble," and his discharge from at least one job. This evidence likely would have had little mitigating effect against the aggravating evidence concerning the brutal, premeditated murder of Mrs. Knippers, Williams's prior criminal history, and the fact that Williams hid the shirt he had been wearing during the crime and initially lied to police about his actions.

The state court specifically found that Williams was not prejudiced by Bonnette's failure to present the testimony of family members or friends.  We cannot say, under the AEDPA's deferential standard of review, that the state court's conclusion "involved an unreasonable application of" clearly established federal law.  Reasonable jurists considering Williams's ineffectiveness claim would not be of "one view" that the state court's judgment was wrong.  Accordingly, the district court's decision to grant federal habeas relief on this ground must be reversed.

D

Finally, we address Williams's argument that constitutional defects in the jury instructions during the sentencing phase of his trial require that his death sentence be vacated.

During the sentencing phase of Williams's trial, the jury found that two statutory aggravating factors existed:  (1) at the time of the murder, Williams was engaged in the perpetration of an aggravated burglary or the attempted perpetration of an aggravated rape,[5] and (2) the offense was committed in an especially heinous, atrocious or cruel manner.  Having found the existence of at least one statutory aggravating factor, as required by Louisiana law, the

_____

[5]The jury had, in fact, already found this factor to be established as a part of its determination that Williams was guilty of capital murder rather than second degree murder, for which the death penalty is unavailable.  Under Louisiana law, during the sentencing phase the prosecution may argue the existence of as many statutory aggravating factors as the evidence supports, including any factor that may already have been established during the guilt phase of the trial.

jury then determined, based upon its consideration of the aggravating factors and any mitigating evidence, that Williams should be sentenced to death.

The second of the two aggravating factors found by the jury, the "especially heinous, atrocious or cruel" factor, has been declared unconstitutionally vague by the United States Supreme Court. <u>Maynard v. Cartwright</u>, 486 U.S. 356, 108 S.Ct. 1853 (1988). The first factor, however, is valid, and amply supported by the evidence, as the Louisiana Supreme Court specifically found during Williams's final appeal on direct review. <u>State v. Williams</u>, 490 So.2d at 262 (finding fact that Williams was hiding in Mrs. Knippers's bathroom, pantless and brandishing a knife, sufficient evidence from which jury could conclude that Williams had committed aggravated burglary or attempted aggravated rape).

Louisiana law requires only that at least one statutory aggravating factor be found by the jury before a defendant may be considered "eligible" for the death penalty. La. Code Crim. Proc. art. 905.3. This requirement was therefore adequately met by the first factor, without regard to the second, invalid factor. Williams was therefore statutorily eligible to receive the death penalty if the jury so chose. Williams argues, however, that his death sentence must still be vacated because the jury, once it had determined that he was "death-eligible," also considered the invalid factor in reaching its ultimate decision as to whether he *should* receive the death penalty. He argues that consideration of

-24-

this invalid aggravating factor at the final stage of his sentencing hearing unconstitutionally tipped the scale in favor of the death penalty.

We should observe first that the Eighth Amendment concerns found in Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759 (1980) (invalidating "outrageously or wantonly vile, horrible or inhuman" aggravating factor), and Maynard, 486 U.S. at 364-65, 108 S.Ct. at 1859 (similarly invalidating the "especially heinous, atrocious or cruel" aggravating factor), do not control Williams's case. The Eighth Amendment requirement under which these factors were held to be unconstitutionally vague is a requirement that the jury's discretion in capital cases be appropriately narrowed and channeled to inhibit the arbitrary imposition of the death penalty. "Since [Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726 (1972)], our cases have insisted that the channeling and limiting of the sentencer's discretion in imposing the death penalty is a fundamental constitutional requirement for sufficiently minimizing the risk of wholly arbitrary and capricious action." Maynard, 486 U.S. at 362, 108 S.Ct. at 1858 (citing cases).

In cases where the death penalty is supported by multiple aggravating factors, this "channeling and limiting" function is satisfied by the presence of at least one valid aggravating factor. This requirement was met in Williams's case by the jury's finding, during the guilt phase and again during the sentencing phase, that Williams had been engaged in the perpetration of an aggravated

-25-

burglary or the attempted perpetration of an aggravated rape. See, e.g., Lowenfield v. Phelps, 484 U.S. 231, 244-46, 108 S.Ct. 546, 554-55 (1988) (explaining that Eighth Amendment narrowing requirement was satisfied by Louisiana scheme wherein state law narrows class of murders eligible for the death penalty in its definition of capital murder, and jury finding of guilt therefore necessarily satisfies Eighth Amendment concern).

The conclusion that the presence of another valid aggravating factor satisfies the requirements of the Eighth Amendment, however, does not end our constitutional inquiry, because the invalidation of one of the two statutory aggravating factors considered by the jury also raises due process concerns under the Fourteenth Amendment. State capital sentencing procedures must, of course, satisfy the requirements of the Due Process Clause of the Fourteenth Amendment. Clemons v. Mississippi, 494 U.S. 738, 746, 108 S.Ct. 1441, 1447 (1990). In Hicks v. Oklahoma, 447 U.S. 343, 100 S.Ct. 2227 (1980), the Court explained:

> Where, however, a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivations by the State.

Id. at 346, 100 S.Ct. at 2229 (citations omitted). The capital defendant therefore has a constitutional liberty interest in having

his sentence imposed by a jury instructed to act within the bounds of its statutory discretion, and that interest is protected by the Due Process Clause of the Fourteenth Amendment.

It is for this reason--the defendant's interest in the state's adherence to the procedures established by state law--that the presence of one or more additional, valid aggravating factors may serve to sustain the death penalty under some state systems, but not under others.  In this vein, the United States Supreme Court has described one difference between capital sentencing systems as a distinction between "weighing" and "non-weighing" systems.  In a "weighing state" the jury's consideration of an unconstitutionally vague factor at the final stage of death penalty proceedings violates the defendant's constitutional rights under the Fourteenth Amendment and requires that a resulting death sentence be vacated, unless a state appellate court has cured the defect by reweighing the valid factors or conducting a harmless error analysis. Richmond v. Lewis, 506 U.S. 40, 46-47, 113 S.Ct. 528, 534 (1992)(citing Clemons, 494 U.S. at 748-52, 110 S.Ct. at 1448).  In a "non-weighing state," however, a defendant's death sentence is not invalidated by the presence of an unconstitutional factor so long as another valid aggravating factor is found by the jury. Zant v. Stephens, 462 U.S. 862, 880-90, 103 S.Ct. 2733, 2744-49 (1983).

The Louisiana Supreme Court has held that Louisiana is a "non-weighing" state, and that the subsequent invalidation of a

statutory aggravating factor found by the sentencing jury does not require that a resulting death penalty be vacated if another valid aggravating factor is also found.  State v. Hamilton, 681 So.2d 1217, 1227 (La. 1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1705 (1997).  Indeed, in Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130 (1992), the United States Supreme Court held that Mississippi was a "weighing" state, and by way of contrasting Mississippi's system to those of other states, appears to have placed Louisiana in the "non-weighing" category:  "[U]nlike the Mississippi process, in Louisiana the jury is not required to weigh aggravating against mitigating factors."  Because the parties have not argued otherwise, we will proceed upon the assumption that Louisiana is, in fact, a non-weighing state with regard to its capital sentencing procedures.

Yet an understanding of the distinction between "weighing" and "non-weighing" systems is necessary in order to analyze the constitutional effect of the instruction given in Williams's case-- that is to say, the effect of a "weighing" instruction given to a jury in a non-weighing state.  We therefore will assess the Supreme Court's various explanations of the critical differences between "weighing" and "non-weighing" systems.

(1)

The United States Supreme Court has been less than perfectly clear about the definitions of "weighing" and "non-weighing" capital sentencing schemes.  The most detailed statement of the

-28-

distinction is found in <u>Stringer v. Black</u>. In <u>Stringer</u>, the Court compared Mississippi's capital sentencing scheme to the Georgia system at issue in <u>Godfrey</u> and <u>Zant</u>:

> The principal difference between the sentencing schemes in Georgia and Mississippi is that Mississippi is what we have termed a "weighing" State, while Georgia is not. Under Mississippi law, after a jury has found a defendant guilty of capital murder and found the existence of at least one statutory aggravating factor, it must weigh the aggravating factor or factors against the mitigating evidence. By contrast, in Georgia the jury must find the existence of one aggravating factor before imposing the death penalty, but aggravating factors as such have no specific function in the jury's decision whether a defendant who has been found to be eligible for the death penalty should receive it under all the circumstances of the case.

<u>Id.</u> at 229-30, 112 S.Ct. at 1136 (internal citations omitted). Thus, in a system that requires the jury to place the statutory aggravating factors on one side of the scale and all of the mitigating evidence on the other, and to balance one side against the other before imposing the death penalty, statutory aggravating factors become critically important in guiding the jury's decision whether death is an appropriate sentence. "[W]hen the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale." <u>Id.</u> at 232, 112 S.Ct. at 1137. The Court reiterated the constitutional harm caused by the use of a vague aggravating factor in performing the initial narrowing and channeling required by the Eighth Amendment, but then noted that "[a] vague aggravating factor used

-29-

in the weighing process is in a sense worse, for it creates the risk that the jury will treat the defendant as more deserving of the death penalty than he might otherwise be by relying upon the existence of an illusory circumstance." Id. at 235, 112 S.Ct. at 1139.

To contrast the "weighing" system at issue in Stringer with a "non-weighing" system, we turn to the Court's decision in Zant, which discussed Georgia's "non-weighing" system in some detail:

> In Georgia, unlike some other states, the jury is not instructed to give any special weight to any aggravating circumstance, to consider multiple aggravating circumstances any more significant than a single such circumstance, or to balance aggravating against mitigating circumstances pursuant to any special standard. In Georgia, the finding of an aggravating circumstance does not play any role in guiding the sentencing body in the exercise of its discretion, apart from its function of narrowing the class of persons convicted of murder who are eligible for the death penalty.

462 U.S. at 873-74, 103 S.Ct. at 2741. In Zant, the Court found that the habeas petitioner's death sentence did not need to be vacated because one of the two aggravating factors found by the jury was unconstitutionally vague. Under the Georgia system, the sentencing jury could not consider imposing the death penalty unless it found that at least one statutory aggravating factor had been established beyond a reasonable doubt. The purpose of this finding was to serve the constitutional requirement of narrowing the range of murders for which a defendant became eligible for the death penalty. Once the jury found the defendant "death-eligible,"

the aggravating factor or factors had served their statutory purpose. The jury then moved to the final stage of determining whether death was the appropriate sentence for the death-eligible defendant. At this point, the aggravating factor was simply part of the mix of aggravating and mitigating evidence that the jury could consider as a whole in determining whether the death sentence was to be imposed. The Court in Zant therefore agreed with the Georgia Supreme Court's conclusion that the jury's ultimate decision to impose death was not materially impacted by the fact that certain evidence--which was otherwise properly before the sentencing jury--was labeled a "statutory" aggravating circumstance. Id.

Although the definition is not precise in every detail, from these cases we derive an understanding of the distinction between "weighing" and "non-weighing" systems sufficient to resolve this case.

In a non-weighing state, statutory aggravating factors serve principally to address the concerns of the Eighth Amendment--that is, the role of the statutory aggravators is to narrow and channel the jury's discretion by separating the class of murders eligible for the death penalty from those that are not. Also, in non-weighing systems the jury is *not* required to balance established aggravating factors against mitigating factors. Although the jury is permitted to consider both aggravating and mitigating evidence in reaching its ultimate determination whether

the death penalty should be imposed, "statutory aggravating factors" play no guiding role as such at this final stage of the sentencing proceeding.

In a weighing state, statutory aggravating factors also serve to narrow and channel the jury's discretion by identifying those murders eligible for the death penalty; as in Georgia's non-weighing system, the jury in a weighing state must find *at least one* statutory aggravating factor before the death penalty may even be considered. After one such factor has been found, however, the two systems differ substantially. Unlike the jury in a non-weighing state, which at this final stage is largely free to exercise its discretion as it chooses based upon all of the facts and circumstances, the jury in a weighing state is not permitted to impose the death penalty unless it concludes that the specific statutory aggravating factors it has found "outweigh" all mitigating evidence. The weighing system jury is effectively told to weigh the specific aggravating factors against mitigating factors as if on an imaginary scale, and to issue its sentencing decision based upon the outcome of that weighing process.

In sum, a jury in a weighing state has been directed by state law in the method it must follow in order to impose the death penalty in ways that a jury in a non-weighing state has not. The weighing state requires the jury to focus only on the *statutory* aggravating factors that it finds, and place only those statutory aggravators on the scale. The weighing state jury is then required

to balance these aggravating factors *against* all mitigating evidence, and it can only impose the death penalty if it determines that the established aggravating factors "outweigh" the mitigating evidence. In contrast, a non-weighing state only requires the jury to find a statutory aggravating factor for the purpose of initially determining whether the defendant is "death-eligible." Thereafter, statutory aggravating factors play no role in the sentencing process above the role of all other evidence, which is the primary feature that distinguishes non-weighing systems from weighing systems.

(2)

Williams argues, however, that Louisiana's status as a non-weighing state has "little relevance" because the jury in his case was given a "weighing" instruction. Williams asserts that because his jury was instructed to "weigh," rather than merely "consider," an invalid aggravating factor, his death sentence was rendered in violation of the Eighth and Fourteenth Amendments. Williams's argument, however, misunderstands the nature of these constitutional requirements.

As discussed above, the Eighth Amendment concerns expressed in Godfrey and Maynard are satisfied in cases where there are other valid aggravating factors that serve the required channeling function. Williams's Fourteenth Amendment argument also fails. As we have explained, the capital defendant has a constitutionally protected liberty interest in having his sentence imposed by a jury

instructed to act within the bounds of its statutory discretion. But that liberty interest is derived from the requirements of state law, and not from the individual jury instructions given in any one case.

Williams complains that his jury was improperly instructed to "weigh" an invalid aggravating factor in determining whether he should be sentenced to death.[6] In a weighing state such as Mississippi, this instruction would reflect state law, and would indeed require that Williams' death sentence be vacated and his case remanded for resentencing, reweighing or harmless error analysis by a state court. <u>Clemons</u>, 494 U.S. at 754, 110 S.Ct. at

---

[6]The court's charge to the jury during the sentencing phase instructed the jury (in relevant part):

> In deciding whether the defendant, Dobie Gillis Williams, should be sentenced to death by electrocution or to life imprisonment, you must weigh the mitigating circumstances against the aggravating circumstances that you find to be established by the evidence.
> This weighing process is a qualitative not a quantitative one . . . you are to consider each of the facts individually and weigh them in your mind and determine what weight to give each . . . you are to weigh the factors, not count them.
> I have previously read to you a list of the aggravating circumstances which the law permits you to consider if you find any of them established by the evidence. . . . These are the only aggravating circumstances that you may consider. You are not allowed to take account of other facts or circumstances as the basis for deciding that the death penalty would be appropriate punishment in this case.
> The mitigating circumstances which I have read for your consideration are given to you as merely examples of some of the factors that you may take into account as reasons for deciding not to impose the death sentence upon Mr. Williams. . . .

1451. Had Williams been convicted and sentenced to death in Mississippi, the jury's weighing of an invalid aggravating factor would have violated Williams's legitimate expectation that he would not be sentenced to death unless the jury found that the established statutory aggravating factors outweighed any mitigating circumstances.

Williams, however, has not suffered any such violation of his legitimate expectations under state law. The process that is due Williams, and in which he has a liberty interest protected by the Due Process Clause, is defined by Louisiana law and not by the instructions issued to his particular jury. Weighing systems provide capital defendants with certain benefits not guaranteed defendants in non-weighing states: the assurance that death cannot be imposed unless the aggravating factors outweigh the mitigating circumstances, and the assurance that the jury will only place upon the scale that aggravating evidence that supports a statutory aggravating factor. A capital defendant in a weighing state has a protectable liberty interest in those benefits, but Williams does not. At the final stage of the sentencing hearing, after the defendant has been found "death-eligible," Louisiana law permits the capital sentencing jury to consider all of the aggravating (and mitigating) evidence from both the guilt-innocence and sentencing phases in reaching its final determination, and does not require that this determination be controlled by the "weighing" of specified "statutory aggravating factors" against any mitigating

-35-

evidence.  As in <u>Zant</u>, Williams's jury was actually free, under state law, to consider the heinous nature of the murder in its final consideration of the mix of both aggravating and mitigating evidence.

Williams's argument amounts to a complaint that his jury was instructed erroneously, under Louisiana law, as to the appropriate sentencing procedure, but that he did not receive the full benefit of that error.  This is not a benefit to which Williams was entitled.  Thus, the Due Process Clause is not offended;  the jury's consideration of the invalid factor did not deny Williams the benefit of any liberty interest that he enjoys under Louisiana law.

IV

In conclusion, we REVERSE the decision of the district court granting the writ of habeas corpus on the ground that Williams received ineffective assistance of counsel during the penalty phase of his trial.  As to Williams's claims concerning alleged racial discrimination in the selection of the grand jury foreman, and constitutional defects in the jury instructions during the penalty phase, we AFFIRM the judgment of the district court denying relief on these claims.

REVERSED in part, and<br>AFFIRMED in part.

BENAVIDES, Circuit Judge, concurring in the judgment of the court:

Although I concur in the judgment of the court, I write separately to emphasize what we do not decide today -- *i.e.*, whether a federal habeas court can conduct harmless error analysis when reviewing a death sentence from a weighing state. Although I recognize that this court has implicitly held that a federal habeas court cannot conduct such an analysis, *see Wiley v. Puckett*, 969 F.2d 86, 94 (5th Cir. 1992), this court has not revisited the issue since the Supreme Court's decision in *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722 (1993). In *Brecht*, the Supreme Court held that a federal court can grant a writ of habeas corpus only if it finds that the alleged constitutional error "'had a substantial and injurious effect or influence in determining the jury's verdict.'" 507 U.S. at 637, 113 S. Ct. at 1722 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Although this court has not revisited the issue, at least three courts of appeals have interpreted *Brecht* as authorizing federal habeas courts to conduct harmless error analysis when reviewing a death sentence from a weighing state. *See, e.g., Davis v. Executive Director of Dep't of Correction*, 100 F.3d 750, 768 n.18 (10th Cir. 1996), *cert. denied*, 117 S. Ct. 1703 (1997); *Williams v. Clarke*, 40 F.3d 1529, 1539-40 (8th Cir. 1994); *Smith v. Dixon*, 14 F.3d 956 (4th Cir. 1994) (*en banc*). The facts of this case, however, do not require that we revisit *Wiley* either explicitly or implicitly. Accordingly, I note that the majority's statement that "[i]n a 'weighing state' the jury's consideration of an unconstitutionally vague factor at the final stage of death penalty proceedings violates the defendant's constitutional rights under the Fourteenth Amendment *and requires that a resulting death penalty be vacated, unless a state appellate court has cured the defect by reweighing the valid factors or conducting a harmless error analysis*," *Maj. Op.* at 27 (emphasis added), is not necessary to the decision before the court.