REVISED - March 3, 2000

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 99-40512

STACY LAMONT LAWTON,

Petitioner-Appellant,

versus

GARY L. JOHNSON, Director, Texas Department
of Criminal Justice, Institutional Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas
(6:98-CV-41)

March 1, 2000

Before WIENER, BARKSDALE, and STEWART, Circuit Judges

PER CURIAM:[*]

Petitioner-Appellant, Stacy Lamont Lawton ("Lawton"), appeals the district court's denial of his petition for federal habeas corpus relief under 28 U.S.C. § 2254, challenging his death sentence for the capital murder of Dennis Price while in the course of committing or attempting to commit a robbery. For the following reasons we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Our description of the factual background of this appeal is drawn from the Texas Criminal Court of Appeals' decision which affirmed Lawton's conviction. Lawton v. State, 913 S.W.2d 542, 548 (Tex. Crim. App. 1995) (en banc); cert. denied, 117 S.Ct. 88 (1996). On the night of December 23, and early morning of December 24, 1992, Karlos Fields ("Fields") and Carlos Black ("Black")

---

[*] Pursuant to 5ᵀᴴ Cɪʀ. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ Cɪʀ. R. 47.5.4.

1

were burglarizing several vehicles in Smith County. Using a stolen shotgun, Lawton stood guard while Fields and Black burglarized the vehicles. Witnesses at the trial testified that Lawton stood at a distance from the vehicles being burglarized, and pointed the shotgun at the windows and doors of the houses near which the vehicles were parked. Lawton told Black and Fields that he would "bust on" (shoot) anyone who attempted to interfere in the burglary spree. In the pre-dawn hours of Christmas Eve, Dennis Price, the victim, was awakened by his daughter, who informed him that his truck was being burglarized. Price ran out into his front yard and was shot in the chest by Lawton. Price died shortly thereafter as a result of the injuries sustained. Lawton, Fields , and Black were apprehended after a high-speed car chase.

In February 1993, a grand jury indicted Lawton for the capital offense of murder with a firearm, in the course of committing and attempting to commit the offense of robbery. Lawton was found guilty by the jury. The next day the jury found that Lawton constituted a continuing threat to society and that Lawton intended to kill his victim. The jury failed to find any mitigating circumstances. Based on the jury's findings the trial court sentenced Lawton to death. The Texas Court of Criminal Appeals affirmed Lawton's conviction, and the Supreme Court denied his subsequent petition for certiorari. In April 1997, Lawton filed an application for habeas corpus relief in the state trial court. The state trial court conducted two evidentiary hearings to determine some previously unresolved factual issues regarding Lawton's claims of ineffective assistance of counsel. After these evidentiary hearings, the state trial court denied Lawton's application. Lawton filed his original application for habeas corpus relief in federal district court in January 1998, which alleged ineffective assistance of counsel and six other claims.[1] Following a motion by the state for summary

---

[1] In his original application for writ of habeas corpus in the district court Lawton raised six issues: 1) ineffective assistance of counsel at the punishment phase of his trial, 2) the statutory language which constitutes the second special issue at the punishment stage is unconstitutional, 3) defining mitigating evidence as evidence which makes the defendant less "morally blameworthy" is unconstitutional, 4) the trial court's failure to inform the jury that a life sentence would result in incarceration for thirty-five years is unconstitutional, 5)there is no meaningful appellate review for sufficiency of the evidence regarding the "mitigating evidence" special issue, 6) the "mitigating evidence" special issue is facially unconstitutional because the statutory provision fails to allocate a burden of proof. On appeal to this court, the petitioner has only briefed his ineffective assistance of

judgment, the court denied Lawton's petition for habeas corpus relief. In May 1998 the district court granted Lawton a certificate of appealability on all issues raised in his application.

## DISCUSSION

Lawton appeals the district court's grant of summary judgment denying his application for a writ of habeas corpus on two grounds. First, Lawton claims that he received ineffective assistance of counsel at the punishment phase of his trial. Second, the petitioner contends that the state trial court erred in failing to instruct the jury that a life sentence would result in the petitioner's incarceration for at least thirty-five years without the possibility of parole. The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996), amended, inter alia, § 2244 and §§ 2253-2255 of chapter 153 of title 28 of the United States Code, governs all habeas proceedings in federal courts filed after the statute's enactment. Because Lawton filed his habeas petition after the effective date of AEDPA, the act governs the disposition of this appeal. Williams v. Johnson, 171 F.3d 300, 303 (5th Cir. 1999) (citing Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)). Accordingly, we may not grant relief with respect to any claim that was adjudicated on the merits in a state court proceeding unless that adjudication : (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Williams v. Cain, 125 F.3d 269, 276-77 (5th Cir. 1997); 28 U.S.C. § 2254(d)(1). We follow §2254(d)(1) because that section sets forth the standard of review for pure questions of law and for mixed questions of law and fact. Id.; See, e.g., Trevino v. Johnson, 168 F.3d 173, 181 (5th Cir.1999); Corwin v. Johnson, 150 F.3d 467, 471 (5th Cir. 1998).

I.      Ineffective Assistance of Counsel

_____

counsel claim, and his jury instruction claim. Therefore, the other issues for which a certificate of appealability was granted have been abandoned.

3

To assert a successful ineffectiveness claim, Lawton is required to establish both: (1) constitutionally deficient performance by his counsel, and (2) actual prejudice as a result of his counsel's ineffectiveness. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 483 L.Ed.2d 674 (1984)). "Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." Id. In order to satisfy the first prong of the Strickland analysis, Lawton must prove that his counsel's performance fell below an objective standard of reasonableness. See id. Reviewing courts must give counsel's performance high deference. See id.

Lawton claims that his trial counsel failed to provide him with effective assistance of counsel at the punishment phase of his trial because his trial counsel failed to conduct a meaningful investigation of his background for the purpose of presenting mitigating evidence to the jury. At the punishment phase of the trial no mitigating evidence was offered on Lawton's behalf.

At the evidentiary hearings held in state court to gather evidence regarding Lawton's claims of ineffective assistance of counsel there was extensive testimony. It is necessary for us to thoroughly review this evidence in order to assess Lawton's claim of ineffective assistance of counsel. Lawton's lead trial counsel in the underlying action, William Wright, testified as to his efforts to gather mitigating evidence on Lawton's behalf. Wright testified that he contacted two psychologists and one psychiatrist in preparation for testimony regarding Lawton's future dangerousness. Wright hoped that Dr. Terry Landrum would testify that Lawton posed no future danger, that in general predictions of future dangerousness are not reliable, and to provide testimony about the prison classification system. Wright stated that after he allowed Dr. Landrum to conduct a psychological evaluation of Lawton he believed that if he called Dr. Landrum to testify that it would open the door to information about Lawton's previous incarcerations. During a previous incarceration Lawton had been disciplined for delivery of a controlled substance while in the Smith County Jail. Therefore, he made a strategic decision not to call Dr. Landrum to testify on Lawton's behalf. Wright further testified that although he did not use Dr. Landrum as a witness, he did consult with Dr. Landrum regarding the testimony of the state's expert on future dangerousness, and used the information he received

4

from Dr. Landrum in his cross examination of the state's expert. Wright also stated that he talked to Dr. Landrum about whether another expert witness would be helpful, and Dr. Landrum said that it would not help.

Wright also recalled that he got Lawton's records from the penitentiary, and he asked Lawton for names of people to contact who would be willing to testify for him at the punishment phase of the trial. Wright also asked Lawton about his family background, schooling, and any injuries he had suffered. Wright says that he then asked his investigator, Silton Joseph "Buck" Fontenot ("Fontenot"), to contact everyone that Lawton had mentioned. Wright states that Fontenot told him that he contacted everyone on the list. He testified that Fontenot told him Lawton's mother said that Lawton had been spoiled by his great-grandmother as a child, and that she did not know a teacher or preacher who would testify on Lawton's behalf because Lawton refused to go to church. Wright also spoke with Lawton's sisters outside the courtroom. He said the sisters told him that Lawton had a good childhood and was spoiled by his great-grandmother, and therefore they could not testify to any hardship in his childhood. The sisters also told Wright that they loved their brother and that he did not have a reputation for violence. Wright was not directly asked whether he made a strategic decision not to call the sisters to testify. Wright further recalled that Lawton's great-grandmother that raised him died a week prior to the trial.[2]

Fontenot, Wright's investigator, was also called to testify at this evidentiary hearing. He stated that he was appointed by the court to assist in Lawton's defense as an investigator. On direct examination Fontenot stated that he remembered talking to some witnesses on Lawton's behalf, but he did not remember who, when, or where he talked to these witnesses. In his official court billing, Fontenot recorded four hours for witness interview on three different dates.

Audrey Lorraine Rogers, Lawton's mother, also testified at the evidentiary hearing. Ms.

---

[2] Donald Killingsworth, Wright's co-counsel in the underlying action, testified at the state habeas evidentiary hearing. Killingsworth confirmed Wright's testimony that the defense did contact several psychologists for possible testimony on Lawton's behalf, including Dr. Jerry Landrum. Killingsworth further stated that although he had not talked to Lawton's family himself he believed that the family had been contacted, and Wright had decided that their testimony would not be helpful.

Roger's testified that she was contacted by Fontenot and asked if she knew anyone in the neighborhood who would be willing to testify on Lawton's behalf. Rogers stated that this conversation lasted for approximately three minutes, and that she was never contacted by Fontenot or Wright again. Rogers also recalled that she attempted to contact Fontenot at his office, but he was not in and she never attempted to call him again. Rogers testified that she was never asked by the defense team about Lawton's childhood, hardships, or anything else about his early life. Rogers told the court that Lawton's birth father was convicted for armed robbery and was in the penitentiary until Lawton was nineteen. Rogers further recalled that Lawton's step father once beat him severely with a shoe, and that she was also physically abused by Lawton's step father. Rogers also explained that Lawton had a loving relationship with his girlfriend and her three children, and that Lawton did not have a reputation for violence or being a bully. On cross examination Rogers conceded that Lawton had not been routinely abused by his step father, and that he was primarily raised by his great-grandmother who provided him with a "nice life."[3]

"[F]ailure to present a case in mitigation during the sentencing phase of a capital murder trial is not, per se, ineffective assistance of counsel." West v. Johnson, 92 F.3d 1385, 1408 (5th Cir. 1996) (citing Stringer v. Jackson, 862 F.2d 1108, 1116 (5th Cir.1988), vacated and remanded on other grounds, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), following remand, 979 F.2d 38 (5th Cir.1992) (modifying original opinion in other respects)). See also, e.g., Andrews v. Collins, 21 F.3d 612, 623-25 (5th Cir.1994); Lincecum v. Collins, 958 F.2d 1271, 1278-80 (5th Cir.), cert. denied, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992); DeLuna v. Lynaugh, 873 F.2d 757, 758-60 (5th Cir.), cert. denied, 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 208 (1989).

---

[3] Sheryl Rogers, Lawton's sister, testified at the hearing. She stated that if called to testify she would have said that Lawton did not have a father figure growing up , that he did not have a reputation as a bully, and that she loved him. Rogers stated that she was not contacted by any member of the defense team prior to the trial.

Therese Grady, another of Lawton's sisters says that Wright did speak to her outside in the hallway of the courtroom, but that she was not contacted prior to trial. She stated that if called to testify she would have told the jury that she loved her brother, and that he did not have a reputation as a bully.

Furthermore, a defendant's trial counsel will not be found to have given ineffective assistance if the attorney was legitimately concerned that any mitigating testimony would have been presented by witnesses whose knowledge would have opened the door to more damaging evidence under cross-examination. See Williams v. Cain, 125 F.3d at 278 (citing Williams v. Collins, 16 F.3d 626, 632 (5th Cir.), cert. denied, 512 U.S. 1289, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994)).

In the present case, Lawton has put forth the affidavits of several family members including his mother and sisters that they were not contacted by the trial counsel to testify on Lawton's behalf at the punishment phase of the trial. Lawton also includes an affidavit from a clinical psychologist, Dr. Patrick Lawrence, who states that he would have testified that in Texas prisons there is an inmate classification system which works well in controlling and managing inmates. Lawton contends that this testimony would have been helpful to the jury in assessing his future dangerousness in society, because it would have shed light on the likelihood of Lawton harming other inmates in the prison environment.

We have considered these affidavits and the testimony of all of the witnesses in the state habeas proceedings. Although it is evident that Lawton's counsel did not present any witnesses in mitigation, it appears that this was done as a strategic decision and not due to lack of effort. See Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir.1994) (reviewing record evidence and finding that counsel made a strategic decision not to offer mitigating evidence during the punishment phase of a capital trial). Lawton's trial counsel had a legitimate concern that testimony by Dr. Landrum would open the door to damaging cross examination regarding Lawton's previous behavior while in the Smith County Jail. Unlike some of this court's previous cases, we have a fully developed record that shows that Wright did contact witnesses on future dangerousness and decided not to use them because he felt they would be exposed to damaging cross examination. Compare Wilson v. Butler, 813 F.2d 664, 672 (5th Cir. 1987) (concluding that the existing record was inadequate for purposes of determining whether counsel made a strategic decision not to offer mitigating evidence during the punishment phase of a capital trial or whether that decision was professionally reasonable).

7

It is also evident that Lawton's trial counsel made a strategic decision not to call Lawton's family to testify on his behalf. These witnesses would not have been able to testify to any severe hardship or abuse in Lawton's past, and would have opened the door to their testimony that in fact they believed Lawton had a reasonably good childhood and was spoiled by his great grandmother. While it may have been beneficial for Lawton's counsel to expend more effort to have meaningful interaction with Lawton's family when assessing their helpfulness, it is clear that he did locate and talk to Lawton's family members in an effort to discover mitigating testimony. The decision not to call Lawton's family was a strategic one and does not constitute deficient performance within the meaning of Strickland. See Williams v. Cain, 125 F.3d at 278 (finding that failure to present mitigating lay testimony from family and friends does not constitute deficient performance if the attorney could have concluded, for tactical reasons, that attempting to present such evidence would be unwise).

Moreover, Lawton has failed to show any prejudice to him as a result of his counsel's decision not to present mitigation evidence. It is undisputed that the State produced evidence at Lawton's trial from several law enforcement officials that Lawton had a bad reputation for being peaceful and law abiding. The state also presented expert testimony from a psychologist that Lawton would constitute a continuing threat to society. Finally, the state presented a statement from the victim's daughter. Due to this extensive and persuasive evidence presented by the State it is highly unlikely that the testimony of Lawton's family or Dr. Landrum would have produced a different result. Therefore, Lawton suffered no prejudice from the absence of their testimony.

II.   Failure to Instruct jury on parole eligibility

Lawton argues that the trial court's failure to instruct the jury that a life sentence would result in Lawton being incarcerated for thirty-five years is a violation of the Eighth and Fourteenth Amendments to the United States Constitution. Lawton admits that Fifth Circuit precedent on this issue is against him, but argues that two Supreme Court decisions weigh in his favor. See Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed. 2d 511 (1990); Simmons v. South Carolina, 512

8

U.S. 154, 114 S.Ct. 2187, 129 L.Ed. 2d 133 (1994).  After a review of those decisions, we find that Lawton's claim is without merit.  In <u>Allridge v. Scott</u>, 41 F.3d 213, 221-22 (5th Cir. 1994), this court held that because the state of Texas does not statutorily provide for life imprisonment without parole, due process does not require the court to instruct the jury on a defendant's parole eligibility.  We interpreted <u>Simmons</u> to apply only when the defendant is *legally* ineligible for parole, which is never the situation for Texas inmates sentenced to life in prison.  <u>See</u> <u>Allridge</u>, 41 F.3d at 222.

CONCLUSION

We find that Lawton did not receive ineffective assistance of counsel during the punishment phase of his trial.  We further find that the trial court's failure to instruct the jury on possible parole eligibility did not violate Lawton's constitutional rights.  Therefore, the judgment of the district court to deny Lawton's petition for habeas corpus relief is AFFIRMED.